UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| KAMLESH BANGA,<br><br>    Plaintiff,<br><br>   vs.<br><br>FIRST USA, NA & CHASE BANK USA, NA and DOES 1 through 10 inclusive,<br><br>    Defendants. | Case No: C 10-0975 SBA<br><br>**ORDER**<br><br>Docket 139, 165, 166 |

Kamlesh Banga ("Plaintiff"), proceeding pro se, brings the instant action against First USA, NA and Chase Bank USA, NA (collectively, "Chase")[1] alleging violations of the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.1 et seq., and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. The parties are presently before the Court on Chase's motion for summary judgment. Dkt. 139. Also before the Court are Plaintiff's motion for leave to file a sur-reply or, in the alternative, motion to strike, and Plaintiff's motion for leave to file excess pages to sur-reply. Dkt. 165, 166. Having read and considered the papers filed in connection with these matters and being fully informed, the Court hereby GRANTS Chase's motion for summary judgment, DENIES Plaintiff's motion for leave to file a sur-reply or, in the alternative, motion to strike, and DENIES Plaintiff's motion for leave to file excess pages to sur-reply. The Court, in its discretion, finds these matters suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

---

[1] It is undisputed that Chase is the successor-in-interest of First USA, NA.

## I. BACKGROUND

On July 5, 2004, Chase sent a letter to Plaintiff and Experian Information Solutions, Inc. ("Experian") notifying them that it had closed Plaintiff's credit card account ending in 7692. Third Am. Compl. ("TAC") ¶ 8. In July 2005, Chase informed Equifax. Inc. ("Equifax") that it had closed Plaintiff's credit card account ending in 7692. Id. Plaintiff alleges that despite the fact that there was no open credit card account to be "reviewed," Chase "obtained and continue[d] to obtain [her] credit report for account review[2] and unknown purposes under false pretenses" on various dates from July 6, 2004 to December 9, 2009. See id. ¶¶ 8-31, 33. According to Plaintiff, Chase "intentionally misrepresented" to Experian and Equifax that their requests for her credit report were for "account review" purposes. See id. ¶¶ 9-31. Plaintiff asserts that Chase's procurement of her credit reports under false pretenses amounts to willful and negligent violations of the FCRA and CCRAA. See id. ¶¶ 33-34, 36-38, 40-41, 43-44, 46-48. Plaintiff further asserts she "has been damaged in that her credit report information ha[s] been obtained without her consent for which she seeks damages under both the FCRA and CCCRA. . . ." Id. ¶ 48.

## II. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[2] The account review process involves the gathering of a consumer's credit information for internal use by Chase. Gormley Decl. ¶ 7. Accessing a credit report for "account review" is known as a "soft pull" because it cannot be seen by potential lenders and does not affect a consumer's credit score. Id. By contrast, a "hard pull" involves accessing a credit report for the purpose of issuing new credit or increasing the amount of existing credit. Id. These inquiries can be seen by potential creditors and can impact a consumer's credit score. Id. Plaintiff objects to the declaration of Gormley on the ground that she does not have personal knowledge of the facts stated therein. Although Gormley, Chase's Risk Director, does not explicitly attest that the facts set forth in her declaration are based upon personal knowledge, she avers that she reviewed the contents of Chase's business records. Because personal knowledge can come from the review of the contents of business records and an affiant may testify to acts that she did not personally observe but which have been described in business records, Plaintiff's objection to Gormley's declaration is OVERRULED. See Aniel v. GMAC Mortg., LLC, 2012 WL 5373388, at *6 (N.D. Cal. 2012) (Armstrong, J) (citing cases) (quotation marks omitted),

judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. Id.

The moving party's burden on summary judgment depends on whether it bears the burden of proof at trial with respect to the claim or defense at issue. When, as here, the nonmoving party bears the burden of proof at trial, the moving party need only point out through argument that the nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001); Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 532 (9th Cir. 2000). Summary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial. Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 805-806 (1999).

Once the moving party has met its burden, the burden shifts to the nonmoving party to designate specific facts showing a genuine issue for trial. Celotex, 477 U.S. at 324; see Anderson, 477 U.S. at 256 ("a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A).

To carry its burden, the nonmoving party must show more than the mere existence of a scintilla of evidence, Anderson, 477 U.S. at 252, and "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In fact, the nonmoving party must

come forward with affirmative evidence from which a jury could reasonably render a verdict in its favor. Anderson, 477 U.S. at 252, 257. In determining whether a jury could reasonably render a verdict in the nonmoving party's favor, the evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in its favor. Id. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Dias v. Nationwide Life Ins. Co., 700 F.Supp.2d 1204, 1214 (E.D. Cal. 2010). To establish a genuine dispute of material fact, the nonmoving party must present affirmative evidence; bald assertions that genuine issues of material fact exist are insufficient. Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007); see also F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) ("A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment."). Further, evidence that is merely colorable or that is not significantly probative, is not sufficient to withstand a motion for summary judgment. Anderson, 477 U.S. at 249-250 (citations omitted).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id. The gist of a summary judgment motion is to require the adverse party to show that it has a claim or defense, and has evidence sufficient to allow a jury to find in its favor on that claim or defense. Id.

### III. DISCUSSION

#### A. Motion for Leave to File Sur-Reply or, in the Alternative, Motion to Strike

Plaintiff requests leave to file a sur-reply to address "erroneous assertions, new evidence, and new legal arguments made for the first time by Chase in its reply brief. Dkt. 166. Plaintiff requests that the Court grant her leave to file a sur-reply which "focuses" on

1  the "serious mischaracterizations of fact and misapplications of fact and misapplications of
2  law that are prevalent in [Chase's] Reply Brief." Id.  Alternatively, Plaintiff requests an
3  order striking all "incorrect statements, new factual references and new legal arguments" in
4  Chase's reply brief.  Id.

5  If a party raises a new argument or presents new evidence in a reply brief, a court
6  may consider these matters only if the adverse party is given an opportunity to respond.
7  See El Pollo Loco v. Hashim, 316 F.3d 1032, 1040-1041 (9th Cir. 2003); Provenz v. Miller,
8  102 F.3d 1478, 1483 (9th Cir. 1996).  In support of her request to file a sur-reply, Plaintiff
9  identifies four "incorrect statements mischaracterizing [her] position that [she] should be
10 permitted to rebut and correct on the record. . . ."  Dkt. 166.  However, Plaintiff failed to
11 specifically identify any new evidence or legal argument proffered by Chase for the first
12 time in its reply brief.

13 Having reviewed Chase's reply brief, the Court finds that granting Plaintiff leave to
14 file a sur-reply is not warranted.  Chase did not raise a new legal argument or present new
15 evidence in its reply brief.  Accordingly, Plaintiff's motion for leave to file a sur-reply is
16 DENIED.  Plaintiff's alternative request to strike is also DENIED.  Plaintiff failed to
17 demonstrate that it is appropriate to strike any portion of Chase's reply brief.

18 **B.   Motion for Leave to File Excess Pages to Sur-Reply**
19 In light of the Court's denial of Plaintiff's request to file a sur-reply, Plaintiff's
20 motion for leave to file excess pages to sur-reply is DENIED as moot.

21 **C.   Motion for Summary Judgment**
22 Chase contends that summary judgment is appropriate because it obtained Plaintiff's
23 credit report during the relevant time period alleged in the TAC for the permissible
24 purposes of reviewing Plaintiff's open credit card accounts[3] and for an application of credit.
25 Def.'s Mot. at 1; see Gormley Decl. ¶¶ 5-6, 8-14, Exhs. D, F, J, K.  Chase argues that

---

[3] Chase issued six different credit cards under Plaintiff's name and/or social security number either as an individual or an authorized user between 2002 and 2006.  Gormley Decl. ¶ 5.  Plaintiff continuously received bills on one or more of her credit card accounts from December 2002 to July 2008.  Id.

Plaintiff cannot produce competent evidence showing that Chase obtained her credit report on the dates alleged in the TAC for the purpose of reviewing her closed credit card account ending in 7692. Defs.' Mot. at 14. In addition, Chase contends that summary judgment is appropriate because Plaintiff cannot establish that she has suffered any damages as a result of Chase obtaining her credit reports. Id. at 2, 17-18. Finally, Chase contends that Plaintiff's FCRA claims are time-barred to the extent they are predicated on Chase obtaining her credit report on July 6, 2004, July 7, 2004, August 11, 2004, and August 12, 2004. Id. at 16-17.

In response, Plaintiff does not contend that Chase improperly obtained her credit report for purposes related to an application of credit or to review one of her open credit card accounts during the relevant time period. Nor does Plaintiff dispute that her FCRA claims are time-barred to the extent they are predicated on Chase obtaining her credit report on July 6, 2004, July 7, 2004, August 11, 2004, and August 12, 2004.[4] Instead, Plaintiff argues that because her credit card account ending in 7692 was closed[5] during the relevant time period and did not have an outstanding balance, Chase's procurement of her credit reports for the purpose of reviewing this account violates the FCRA and the CCRAA. Pl.'s Opp. at 12. Although the TAC alleges that Chase obtained Plaintiff's credit report for account review and "unknown purposes" under false pretenses, Plaintiff does not argue or

---

[4] As an initial matter, the Court deems Plaintiff's failure to respond to Chase's statute of limitations argument as a concession of the argument. See Ramirez v. Ghilotti Bros. Inc., 941 F.Supp.2d 1197, 1210 n. 7 (N.D. Cal. 2013). That aside, the undisputed facts demonstrate that any FRCA claim predicated on the first four dates alleged in the TAC is barred by the five-year statute of limitations. Under the FCRA, an action to enforce any liability may be brought no later than the earlier of: (1) two years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) five years after the date on which the violation that is the basis for such liability occurs. See 15 U.S.C. 1681p. Here, it is undisputed that the instant action was commenced on August 17, 2009. It is further undisputed that, in May and/or June 2009, Plaintiff discovered that Chase allegedly obtained her credit report on four occasions from July 6, 2004 to August 12, 2004 in violation of the FCRA. Accordingly, because Plaintiff did not file suit within five years from the occurrence of these alleged FCRA violations, any FCRA claim based on them is time-barred.

[5] Plaintiff's credit card account ending in 7692 was closed on July 5, 2004. Gormley Decl. ¶ 5.

offer any evidence demonstrating that Chase obtained her credit report for any other impermissible purpose other than to review her closed credit card account ending in 7692. Thus, the issue is whether Chase violated the FCRA and/or CCRAA by obtaining Plaintiff's credit reports during the relevant time period for the purpose of reviewing her closed credit card account ending in 7692.[6]

### 1. First Claim for Relief: Willful Violations of FCRA

Section 1681b provides the permissible purposes for which a person may use or obtain an individual's credit report. 15 U.S.C. § 1681b. Under § 1681b, any consumer reporting agency may furnish a consumer report to a person which it has reason to believe "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or *review . . . of an account* of, the consumer." 15 U.S.C. § 1681b(a)(3)(A) (emphasis added). The FCRA imposes civil liability where the defendant "willfully fails to comply" with the statute. 15 U.S.C. § 1681n(a).

Knowing noncompliance of the FCRA or reckless disregard of the requirements of the FCRA constitute a willful violation. Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 57 (2007). "[A] company subject to [the] FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id. at 69 (internal quotation marks omitted). A defendant's conduct is reckless only if it was "objectively unreasonable" in light of "legal rules that were 'clearly established' at the time." Id. at 69-70. Thus, even

---

[6] Chase's reply brief contains numerous objections to the evidence submitted by Plaintiff in opposition to the instant motion. The Court declines to rule on Chase's evidentiary objections because even when the objected to evidence is considered, Chase is still entitled to summary judgment. See Smith v. County of Humboldt, 240 F.Supp.2d 1109, 1115-1116 (N.D. Cal. 2003) (Illston, J.) (refusing to rule on the evidentiary objections in defendant's reply because "even if the evidence submitted by plaintiff is considered by this Court, plaintiff fails to state a colorable claim"); BSD, Inc. v. Equilon Enterprises, LLC, 2013 WL 942605, at *6 (N.D. Cal. 2013) (Armstrong, J.) (declining to rule on objections in defendant's reply because even when the objected to evidence is considered, defendant is still entitled to summary judgment).

when a court disagrees with a party's reading of [the] FCRA, it may not impose liability for a reckless, and therefore willful, violation of the statute unless that party's reading is "objectively unreasonable." See id. at 69. If a company's interpretation of the statutory text is not "objectively unreasonable," the interpretation "falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability." Id. at 70. To determine whether a defendant's reading was objectively reasonable, courts may consider the text of the Act or "guidance from the courts of appeal or the Federal Trade Commission." Id.

The Court finds that summary judgment in favor of Chase is appropriate on Plaintiff's first claim for relief because Plaintiff has failed to adduce evidence raising a genuine issue for trial. Plaintiff did not proffer any evidence demonstrating that Chase obtained her credit report during the relevant period for the purpose of reviewing her closed credit card account ending in 7692 rather than for the purpose of reviewing one of her open credit card accounts or for some other permissible purpose. Moreover, even if Plaintiff had presented sufficient evidence to establish a genuine issue for trial, Plaintiff's first claim for relief fails as a matter of law.

The plain language of the FCRA does not prohibit a creditor such as Chase from obtaining a credit report for the purpose of reviewing a closed credit card account. The text of the FCRA does not distinguish between closed and open accounts. See 15 U.S.C. § 1681b(a)(3)(A). Nor has Plaintiff pointed to any circuit court authority demonstrating that it is objectively unreasonable to interpret the FCRA as prohibiting a creditor from obtaining a consumer's credit report after a consumer's account with that creditor is closed. See Safeco, 551 U.S. at 69-70 & n. 20 (no willful violation if defendant's interpretation of "less-than-pellucid" statutory text is "not objectively unreasonable" and there is no guidance from courts or relevant agencies). In fact, the Eleventh Circuit has held that it is not objectively unreasonable to interpret the FCRA as permitting the sale of a consumer credit report to a creditor for "account review" purposes after the consumer has closed their account with that creditor. See Levine v. World Financial Network Nat. Bank, 554 F.3d

1314, 1318-1319 (11th Cir. 2009) (concluding that credit reporting agency did not willfully violate the FRCA when it sold a consumer report to a creditor for "account review" after consumer had closed his account with creditor; noting that the FCRA does not distinguish between closed and open accounts, that the statute's reference to "account" did not necessarily mean an open account, and nothing in the FCRA forbids the sale of reports for consumers whose accounts were closed). Accordingly, Chase's motion for summary judgment on Plaintiff's first claim for relief is GRANTED.

### 2. Second Claim for Relief: Willful/Negligent Violations of the CCRAA

The text of § 1785.11(a)(3)(A) of the CCRAA is substantially similar to the text of § 1681b(a)(3)(A) of the FCRA. It provides that "[a] consumer credit reporting agency shall furnish a consumer credit report only under the following circumstances: . . . [t]o a person whom it has reason to believe . . . [i]ntends to use the information in connection with a credit transaction . . . involving the consumer as to whom the information is to be furnished and involving the extension of credit to, or *review . . . of an account* of, the consumer. . . ." Cal. Civ. Code § 1785.11(a) (emphasis added).

The Court finds that summary judgment in favor of Chase is warranted on Plaintiff's second claim for relief. Given the similarity between § 1681b(a)(3)(A) of the FCRA and § 1785.11(a)(3)(A) of the CCRAA, and because judicial interpretation of the FCRA is persuasive authority and entitled to substantial weight when interpreting the CCRAA,[7] the Court finds that Chase is entitled to summary judgment on Plaintiff's claim for willful violations of the CCRAA for the reasons stated above. Further, the Court finds that Chase is entitled to summary judgment on Plaintiff's claim for negligent violations of the CCRAA because Plaintiff has not adduced evidence demonstrating that she suffered any actual damages caused by Chase's alleged violations of the CCRAA. See Trujillo v. First

---

[7] The CCRAA "mirrors" the provisions of the FCRA. See Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1335 (9th Cir. 1995). Because the CCRAA is substantially based on the FCRA, judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions. Carvalho v. Equifax Information Services, LLC, 629 F.3d 876, 889 (9th Cir. 2010).

American Registry, Inc., 157 Cal.App.4th 628, 637-639 (2007) (affirming summary adjudication on CCRAA claim where plaintiffs failed to raise a triable issue as to whether they suffered any damages as a result of a violation of the CCRAA; absent actual damages, a CCRAA claim fails as a matter of law).[8]

In her deposition, Plaintiff testified that her damages are the costs she incurred in purchasing the five credit reports from which she discovered the alleged statutory violations giving rise to this suit.  See Banga Dep. 53:14:54-2.  In opposition to the instant motion, Plaintiff also asserts that she has incurred damages in the form of a "monthly service fee to the credit reporting agencies in order to have her credit reports . . . monitored."  Pl.'s Opp. at 9.  In support of this assertion, Plaintiff submitted documents purporting to show that her bank account was debited on numerous occasions during the period from late December 17, 2012 to October 29, 2013 to pay for a credit monitoring service.  See Banga Decl., Exh. K. However, Plaintiff discovered the conduct giving rise to the instant action in 2009.  Plaintiff offers no explanation for why she waited over three years to pay for a service that monitors her credit.  Nor has she shown that her decision to monitor her credit constitutes damages caused by Chase's conduct.

Based on the record presented, the Court finds that Plaintiff has failed to raise a genuine issue for trial as to whether she has suffered any damages caused by Chase's conduct.  Plaintiff did not proffer evidence establishing a causal connection between Chase's alleged statutory violations and her injuries.  See Crabill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001) (without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of "actual damages" under the FCRA.).  Accordingly, summary judgment in favor of Chase is warranted on Plaintiff's second claim for relief.

---

[8] Section 1785.31(a) provides: "Any consumer who suffers damages as a result of a violation of this title by any person may bring an action in a court of appropriate jurisdiction against that person to recover the following [specified actual and punitive damages and other relief]."  Cal. Civ. Code § 1785.31(a).

### 3. Third Claim for Relief: Continuing Violation of the FCRA and CCRAA

Plaintiff's third claim for relief alleges that Chase has obtained and continues to obtain her credit report information under false pretenses in violation of the FCRA and CCRAA. TAC ¶ 48. According to Plaintiff, such conduct constitutes willful and negligent violations of the FCRA and the CCRAA. Id. ¶ 47. To the extent this claim alleges willful violations of the FCRA and willful and negligent violations of the CCRAA, the Court finds that summary judgment in favor of Chase is appropriate for the reasons stated above. To the extent this claim alleges a negligent violation of the FCRA, summary judgment in favor of Chase is warranted because Plaintiff has failed to adduce evidence raising a genuine issue for trial as to whether she has suffered any actual damages caused by Chase.[9] See Banga v. Experian Information Solutions, Inc., 473 Fed.Appx. 699 (9th Cir. 2012) ("The district court properly granted summary judgment on Banga's claims for negligent violations under § 1681o of the Act because she failed to raise a triable dispute as to whether defendants' conduct resulted in actual damages."). Accordingly, Chase's motion for summary judgment on Plaintiff's third claim for relief is GRANTED.

### 4. Res Judicata

Finally, although Chase does not argue that summary judgment is warranted based on the doctrine of res judicata, the Court raises this issue *sua sponte*. See Clements v. Airport Auth. of Washoe Cnty., 69 F.3d 321, 329-330 (9th Cir. 1995) (recognizing that courts may raise *sua sponte* arguments of res judicata). Res judicata encompasses two subsidiary doctrines, claim preclusion and issue preclusion. Americana Fabrics, Inc. v. L & L Textiles, Inc., 754 F.2d 1524, 1529 (9th Cir. 1985). The doctrine of claim preclusion precludes relitigation of claims that were raised or should have been raised in earlier litigation. San Remo Hotel L.P. v. San Francisco City and County, 364 F.3d 1088, 1094 (9th Cir. 2004). The doctrine of issue preclusion, on the other hand, forecloses relitigation

---

[9] For negligent violations of the FCRA, a prevailing consumer may recover only actual damages and reasonable attorneys' fees and costs. 15 U.S.C. § 1681o.

of factual or legal issues that have been actually and necessarily decided in earlier litigation. Id.  By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions. Montana v. United States, 440 U.S. 147, 153-154 (1979).

The Court finds that the claims alleged in the TAC are barred by the doctrine of issue preclusion.  To apply issue preclusion, the following elements are required: (1) a full and fair opportunity to litigate the issue in the prior action; (2) the issue was actually litigated; (3) a final judgment resulted; and (4) the person against whom preclusion is asserted was a party to the prior action.  In re Palmer, 207 F.3d 566, 568 (9th Cir. 2000). Here, all of the requirements for issue preclusion are met.  In a previous lawsuit brought by Plaintiff, this Court determined that a creditor does not willfully or negligently violate the FCRA or CCRAA by obtaining a consumer's credit report for account review purposes after a consumer's credit card account with that creditor has been closed.  See Banga v. Experian Information Solutions, et al., C 08-04147–SBA, Dkt. 293.  This is the same issue that Plaintiff seeks to litigate in this action.  It is undisputed that Plaintiff's claims are predicated on Chase obtaining her credit reports for the impermissible purpose of reviewing her closed credit card account ending in 7692.  Accordingly, because Plaintiff had a full and fair opportunity to litigate this issue in the prior action, and because a final judgment on the merits was entered against Plaintiff in that action, summary judgment in favor of Chase is appropriate.

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for leave to file a sur-reply or, in the alternative, motion to strike, is DENIED.

2. Plaintiff's motion for leave to file excess pages to sur-reply is DENIED.

3. Chase's motion for summary judgment is GRANTED.

4. The Clerk shall close the file and terminate all pending matters.

IT IS SO ORDERED.

Dated: March 19, 2014

*[signature]*
SAUNDRA BROWN ARMSTRONG
United States District Judge